**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

CHERRYL AUGUSTE,

                           Plaintiff,

        v.

U.S. CUSTOMS AND BORDER
PROTECTION, et al.,

                          Defendants.

No. 8:24-CV-0066
(MAD/CFH)

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**

Cherryl Auguste
2558 Regina Street
Ontaria K2B6X6
Canada
Plaintiff pro se

## REPORT-RECOMMENDATION AND ORDER

### I. Background and In Forma Pauperis

Presently pending before the Court for review is plaintiff's application for leave to proceed in forma pauperis ("IFP") and review of the sufficiency of the complaint pursuant to 28 U.S.C. § 1915 and Northern District of New York Local Rule 72.3(d).[1]  See Dkt. No. 2.[2]  Plaintiff purported to commence this action on January 3, 2024, with the filing of the complaint and IFP application, in the U.S. District Court for the Southern District of New York.  See Dkt. Nos. 1

---

[1] See N.D.N.Y. L.R. 72.3(d) ("Pro Se Non-Prisoner Cases. Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. §1915(e)(2) and 28 U.S.C. §1915A when an application to proceed in forma pauperis is filed.")

[2]  Also pending is plaintiff's pro se motion for permission to file electronically, motion for a temporary injunction, and motion to appoint counsel.  See Dkt. Nos. 8-10.  Plaintiff's pro se motion for permission to file electronically will be addressed separately.

("Compl."), 2.  On January 8, 2024, the Southern District of New York entered an order transferring the matter to this Court.  See Dkt. Nos. 4, 5.  In so transferring, the Southern District of New York noted that plaintiffs alleged that defendants "violated their rights in Massena, New York, and Ogdensburg, New York, both of which are in Saint Lawrence County."  Dkt. No. 4 at 2.  The Southern District further noted that "Defendants do not all reside in the same State, and thus venue does not lie in this district under Section 1391(b)(1) and that plaintiffs "allege that the claims arose in Saint Lawrence County, New York, which is outside [of the Southern] district"; therefore, the Southern District concluded that venue is not proper in the Southern District.  Id.

Upon review of plaintiff Cherryl Auguste's in forma pauperis ("IFP") application, the Court concludes that plaintiff financially qualifies for leave to proceed IFP.  See Dkt. No. 2.[3]

## II.  **Initial Review**

### A.  **Legal Standards**

28 U.S.C. § 1915 provides that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they

---

[3]  Plaintiff is advised that, despite being granted IFP, she is still required to pay any costs and fees she may incur in this matter, including, but not limited to, copying fees and witness fees.

suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam)

(internal quotation marks omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into pro se submissions claims
> that are not consistent with the pro se litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by pro se litigants, and that pro se status does not
> exempt a party from compliance with relevant rules of
> procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a

court is obligated to construe his pleadings liberally.") (internal quotation marks and

citations omitted).  Thus, the Court is not required to accept unsupported allegations

that are devoid of sufficient facts or claims.  Although detailed allegations are not

required at the pleading stage, the complaint must still include enough facts to provide

the defendants with notice of the claims against them and the grounds upon which

these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell

Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Ultimately, the plaintiff must plead

"enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S.

at 570; see Iqbal, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.").

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[4]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; and
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  FED. R. CIV. P. 8(d).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id. (citations omitted).


### B.  **Complaint**

Plaintiff Cherryl Auguste resides in Ottawa, Canada.  See Compl. at 3.  She indicates that she is a "Canada Resident/Haiti Citizenship."  Compl. at 1.  She identifies as defendants: U.S. Customs and Border Protection, located in Massena, New York; the U.S. Department of Homeland Security, located in Rooseveltown, New York; and defendant U.S. Citizenship and Immigration Services, located in Camp Springs, Maryland.  See Compl. at 4.   Plaintiff provides that the "places of occurrence" were in Massena, New York and Ogdensburg, New York."  Id. at 5.

Plaintiff provides that the "dates of occurrence" to be August 11, 2023, and December 25, 2023.  See Compl. at 5.  Plaintiff states that the defendants "fail[ed] to provide duty of to process Asylum Claim on multiple occasions."  Id. at 6.   Plaintiff further contends that defendants, generally, violated "The Fifth Amendment Due Process Clause" and the

"Fourteenth Amendment Due Process" insofar as her family's "right to file Asylum against Canada[.]  Denial of rights has led to more abuse legal right to 'family integrity[.]'  Our rights to see our family member who is incarcerated[.]  Immigration rights being denied forcing us back into abuse environment being persecuted in Canada."  Compl. at 2.

Plaintiff makes reference to "The Refugee Act of 1980" and unspecified "[f]ederal regulations" that plaintiff states require "that asylum officers receive 'special training in human rights law' and 'nonadversarial interview techniques.'"  Compl. at 5.  Plaintiff provides that the defendants, collectively, "failed to protect the plaintiffs from further harm after plaintiffs asked the government of the United States for protection against the persecution the family is facing in Ottawa, Canda.  By the government of Canada.  Where this family is A Black African American Mother with Three Black Children being persecuted."  Id. at 6.  Plaintiff contends that defendants

> denied the plaintiffs their rights by failing to provide duty of to process Asylum Claim on multiple occasions when this family is asking to flee Abuse living in the capital of Canda being newcomers, facing racial profiling, discrimination, targeted persecution this family has been financially harmed and abused, medically harmed and abused, denied basic rights base [sic] on families skin color and continuously followed and placed under surveillance for no reason other than the color of their skin and living in Canada by law enforcement and being illegally handcuffed and chained both arm and legs and video recorded after this abuse and other abuses not listed the plaintiffs asking for protection defendants failed to protect and provide due process sending family back into abuse environment where family have been subjected to more abuse and arrested in retaliation for speaking up about abuse they are facing financial abuse where plaintiffs are unable to attend school due to extreme poverty and food insecurities plaintiffs are scared to continue to live in Canada and are asking for immediate relief and humanitarian relief to Leave Canada immediately.

Compl. at 6.

Plaintiff seeks $100 million in damages and "immediate refugee protection and immigration documents to be able to leave Canada at once.  To leave this abuse environment and file asylum papers and asylum claim properly against the government of Canada for the crimes it committed against our family."  Compl. at 6.

## C.  **Initial Review of Complaint**[5]

### 1.  **Minor Plaintiffs**

As a threshold issue, plaintiff appears to name her three children, presumably minors, as plaintiffs.  However, the Court observes that plaintiff Cherryl Auguste, as a pro se plaintiff, cannot represent other plaintiffs, including minors, and, furthermore, minors cannot represent themselves pro se.  "As a nonattorney litigant appearing pro se, [plaintiff Ms. Auguste] cannot represent anyone, including h[er] minor child[ren], in this action."  Schneider v. Mahopac Cent. Sch. Dist., No. 20-CV-0709 (CS), 2020 WL 509030, at *1 (S.D.N.Y. Jan. 30, 2020) (citing Iannaccone v. Law, 142 F.3d 553, 558 (2d Cir. 1998)); see also FED. R. CIV. P. 17(c) (infant or incompetent person may sue by his legal representative or guardian ad litem).  Indeed, 28 U.S.C. § 1654 "does not permit 'unlicensed laymen to represent anyone else other than themselves.'"  Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam) (citation omitted).  Further, a minor cannot represent his or her interests pro se.  Accordingly, insofar as Ms. Auguste attempts to name as plaintiffs Davoriian Auguste, Kerome Brown Jr., or Aiden Auguste, it is recommended that any claims sought to be brought on their behalf be dismissed.  The undersigned regards Ms. Auguste as the only plaintiff in this action.  The dismissal of the minor plaintiff's is without prejudice to rejoin the minor plaintiffs if (1) the case is permitted to proceed, and (2) they are represented by an attorney.[6]

### 2.  **42 U.S.C. § 1983**

Insofar as plaintiff contends that she was arrested outside of her home, plaintiff provides that her home is located in Ottawa, Canada. See Compl.  Thus, Canadian authorities would have arrested plaintiff.  It appears that plaintiff is attempting to bring claims pursuant to 42

---

[5]  Unless noted otherwise, the Court has provided plaintiff with copies of any unpublished cases cited herein.
[6]  For the reasons stated below, in reviewing plaintiff's motion for appointment of counsel, the Court will not appoint counsel for plaintiff's children at this time.  See infra at 17-19.

U.S.C. 1983 for violation of her rights pursuant to the United States Constitution and for false arrest claims pursuant to New York State law.  However, because the incident did not occur in New York, indeed, it occurred outside of this country and by non-U.S. officials, this country's laws do not apply.  To recover under § 1983, a plaintiff must prove (1) that she was deprived of a federally-protected right, and (2) that the deprivation occurred under color of state law.  See Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978); see also Rodriguez v. Phillips, 66 F.3d 470, 473 (2d Cir.1995).   "It is axiomatic that § 1983 does not provide a remedy for all constitutional injuries, but only for those caused by persons who either are state actors or acting 'under color' of state law."  Annunziato v. The Gan, Inc., 744 F.2d 244, 249 (2d Cir. 1984) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982)) (additional citations omitted). "To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  Whalen v. Cnty. of Fulton, 126 F.3d 400, 405 (2d Cir. 1997) (citing Eagleston v. Guido, 41 F.3d 865, 875-76 (2d Cir. 1994)).

To prove the deprivation of a right protected by the Constitution, a plaintiff must prove state action.  See, e.g., Harrison v. New York, 95 F. Supp. 3d 293, 321-22 (E.D.N.Y. 2015) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'") (additional citation omitted).  Thus, any claim for false arrest, excessive force, or the resultant injuries stemming from an arrest by Canadian authorities in Canada would need by the appropriate Canadian court/jurisdiction.  As plaintiff was not aggrieved by a state actor or private person acting under the color of state law, and was not deprived of a right, privilege or immunity secured by the Constitution or the laws of the United

States – given that the acts complained of occurred in Canada, upon a non-United States citizen, presumably by Canadian police officers – section 1983 protections and New York State laws do not apply.  See generally Howard v. Maximus, Inc., No. 3:13-CV-01111-ST, 2013 WL 7155010, at *3 (D. Or. Nov. 20, 2013), report and recommendation adopted in part, No. 3:13-CV-01111-ST, 2014 WL 468887 (D. Or. Feb. 5, 2014) ("Congress has made no statement that § 1983 applies to extraterritorial conduct. To the contrary, Congress passed § 1983 in its original form shortly after the Civil War to enforce § 1 of the Fourteenth Amendment. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989) (describing § 1 of the Civil Rights Act of 1871 as the "precursor" to § 1983).  Its purpose was to provide individuals with a private cause of action against state actors for violating their federal civil rights.  See Will, 491 U.S. at 66.  Thus, § 1983 must be interpreted to exclude conduct 'under color of' the law of any state or territory of the United States and not foreign law.").  This Court cannot apply this statute extraterritorially. Accordingly, insofar as plaintiff's complaint can be interpreted as seeking to bring a claim relating to the arrest and resultant injury that occurred outside of this country and presumably effectuated by Canadian officials/agents, it is recommended that these claims be dismissed with prejudice due to this Court and District being the improper venue and forum for these claims.

Next, plaintiff appears to contend that her procedural due process rights were violated, under the Fifth and Fourteenth Amendments, by U.S. Customs and Border Protection, the U.S. Department of Homeland Security, the U.S. Citizenship and Immigration Services, and the U.S. Embassy in Ottawa, Canada.  See generally Compl.  As this Court has set forth, plaintiff cannot proceed under Section 1983 against federal actors.

> Section 1983 provides a remedy only for state actors' deprivations of federal law or constitutional rights, and it does not apply to the actions of the federal government or its agents. See United States v. Acosta, 503 F.3d 54, 60 (2d Cir. 2007) ("Section 1983, of course, does not apply to allegedly unlawful acts of federal officers."). Thus, because Section 1983 cannot apply to any alleged actions by IRS employees, who are agents of the federal government, there is no 'unequivocally expressed' waiver of sovereign immunity allowing [Plaintiff] to bring suit against the IRS Defendants under Section 1983, and the Court has no subject matter jurisdiction over such claims. See Binder & Binder, 818 F.3d at 70;

see also Yalkut v. Gemignani, 873 F.2d 31, 35 (2d Cir. 1989) ("Section 1983 however, applies only to actions taken under the color of state law that violate constitutional or federal statutory rights. [Plaintiff] makes no allegation of state action, nor can he, because defendants' actions were purely federal in nature.") (discussing suit against IRS for tax assessment and IRS agents' attempt to collect tax debt).

Checksfield v. Internal Revenue Serv., No. 5:21-CV-1180 (GTS/ML), 2022 WL 2713499, at *7 (N.D.N.Y. July 13, 2022) (quoting Lopez v. "Director" of the Internal Revenue Serv.'s (IRS) Ogden Utah Office, 16-CV-0600, 2017 WL 337978, at *5 (D. Conn. Jan. 23, 2017); Vidurek v. Koskinen, 789 F. App'x 889, 892-93 (2d Cir. 2019) (summary order)). Thus, plaintiff may not proceed under section 1983 for violations of her constitutional rights by federal agencies. Insofar as plaintiff's complaint may be read as seeking to raise section 1983 claims against the named federal agencies, it is recommended that these claims be dismissed with prejudice for lack of subject matter jurisdiction.

## B. **Bivens**

"Suits against a federal agency or a federal official in his or her official capacity are considered suits against the United States and are thus barred unless the United States has waived sovereign immunity." Banks v. United States, No. 10 CIV. 6613 GBD/GWG, 2011 WL 4100454, at *8 (S.D.N.Y. Sept. 15, 2011), report and recommendation adopted, No. 10 CIV. 6613 GBD/GWG, 2011 WL 5454550 (S.D.N.Y. Nov. 9, 2011) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived."). "Any waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed' 'through an act of Congress.'" Id. (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)); accord Adelke v. United States,

355 F.3d 144, 150 (2d Cir. 2004) (quoting United States v. Nordic Vill., Inc., 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)); see also Celauro v. U.S. I.R.S., 411 F. Supp. 2d 257, 269 (E.D.N.Y. 2006), aff'd sub nom. Celauro v. United States, 214 F. App'x 95 (2d Cir. 2007) (citing 14 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3655 (3d ed. 2005) ("Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States, or that in effect the proceeding is not a suit against the United States.")).  The waiver of sovereign immunity is a perquisite to subject-matter jurisdiction over a claim against the United States.  See Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev., 175 F.3d 132, 139 (2d Cir. 1999) (citing United States v. Mitchell, 463 U.S. 206, 212 (1983)).

> In Bivens, the Supreme Court held that a federal official may be held personally liable for damages if the official personally violated a plaintiff's constitutional rights. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395-397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). "The elements of a Bivens claim are: (1) that a defendant acted 'under color of federal law' (2) 'to deprive plaintiff of a constitutional right.'"

Bal v. U.S. Dep't of the Treasury, No. 21-CV-4702 (OTW), 2023 WL 6517738, at *2 (S.D.N.Y. Oct. 5, 2023) (quoting Barbaro v. U.S. ex rel. Fed. Bureau of Prisons FCI Otisville, 521 F. Supp. 2d 276, 281 (S.D.N.Y. 2007)) (quoting Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995)).

> As the Second Circuit has explained,

> where an individual "has been deprived of a constitutional right by a federal agent acting under color of federal authority," the individual may bring a so-called Bivens action for damages against that federal agent in an individual capacity, Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006), provided that Congress has not forbidden such an action and that the situation presents "no special factors counselling hesitation in the absence of affirmative action by Congress," [Hudson Valley Black Press v. I.R.S., 409 F.3d 106, 108 (2d Cir.2005) ] (quoting Bivens, 403 U.S. at 396).

Lombardi v. Whitman, 485 F.3d 73, 78 (2d Cir. 2007).

Because a <u>Bivens</u> action is a judicially created remedy, courts proceed cautiously in extending such implied relief.  Bivens, 403 U.S. at 396–97, 91 S.Ct. 1999. Under <u>Bivens</u>, the Court conducts a two-part inquiry to determine whether the remedy is available. <u>McGowan v. United States</u>, 825 F.3d 118, 123 (2d Cir. 2016). First, the Court "determine[s] whether the underlying claims extend <u>Bivens</u> into a new context." <u>Id.</u> "If the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme Court], then the context is new." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 139, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017). Meaningful differences may include: "the rank of the officers involved; the constitutional right at issue; the extent of judicial guidance for the official conduct; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors not considered in previous Bivens cases." <u>Abbasi</u>, 582 U.S. at 140, 137 S.Ct. 1843.

When a claim extends <u>Bivens</u> into a new context, the Court next determines "(a) whether there is an alternative remedial scheme available to the plaintiff, and, even if there is not, (b) whether special factors counsel hesitation in creating a Bivens remedy." <u>McGowan</u>, 825 F.3d at 123. A <u>Bivens</u> remedy is not available when adequate remedial mechanisms exist for the alleged constitutional violations. <u>Celauro v. U.S. I.R.S.</u>, 411 F. Supp. 2d 257, 266 (E.D.N.Y. 2006), <u>aff'd sub nom.</u> <u>Celauro v. United States</u>, 214 F. App'x 95 (2d Cir. 2007) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)).

Courts must be attentive to any special factors counseling hesitation before authorizing a new kind of federal litigation. <u>Arar v. Ashcroft</u>, 585 F.3d 559 (2d Cir. 2009); <u>Chappell v. Wallace</u>, 462 U.S. 296, 298, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). If special factors counsel hesitation, the Court may not extend Bivens into a new context. <u>Arar</u>, 585 F.3d at 576-78. The existence of a remedial scheme may be considered a special factor counseling hesitation. <u>Egbert v. Boule</u>, __ U.S. __, 142 S. Ct. 1793, 1804, 213 L.Ed.2d 54 (2022); <u>Atterbury v. U.S. Marshals Serv.</u>, 805 F.3d 398, 404 (2d Cir. 2015).

<u>Bal v. U.S. Dep't of the Treasury</u>, No. 21-CV-4702 (OTW), 2023 WL 6517738, at *2-3 (S.D.N.Y. Oct. 5, 2023).  Thus, the undersigned must determine whether plaintiff may proceed under <u>Bivens</u>.

Plaintiff contends that the named federal agencies, apparently collectively, violated her procedural due process rights by "fail[ing] to provide duty of to process Asylum Claim on multiple occasions."  <u>Id.</u> at 6.   It is not clear whether plaintiff is alleging (1) that she was denied the ability to apply for asylum and that denial of an opportunity to apply amounts to a procedural due process violation; (2) she applied for asylum but her application was not timely processed; (3) that she applied for asylum, was denied, and in the process of denying her asylum

application, her due process rights were somehow violated; or (4) some other theory.  See generally Compl.

Plaintiff may only bring a Bivens claim against individuals, not agencies.  See F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994) (holding that Bivens claims are for claims against federal officers, not federal agencies); see also Coon v. Trustco Bank Corp., No. 1:07-CV-1115 (GLS/RFT), 2007 WL 4118938, at *1 (N.D.N.Y. Nov. 16, 2007) (citing Carlson v. Green, 446 U.S. 14, 20 (1980) (". . . a plaintiff must assert a Bivens claim against an officer individually, not against the agency itself or the United States."); Petrazzoulo v. U.S. Marshals Serv., 999 F. Supp. 401, 406 (W.D.N.Y. 1998) (dismissing Bivens claim against the U.S. Marshals Service, as such a claim cannot be brought against a federal agency).  Plaintiff has named only federal agencies, not individual federal officers.  See generally Compl.[7]  Thus, as plaintiff cannot proceed against the named federal agencies under a Bivens theory of liability, it is recommended that insofar as her complaint can be read as seeking to raise Bivens claims against the federal agencies, such claims be dismissed with prejudice.

Even assuming plaintiff had properly named individual federal officers, or could amend her complaint to name them, it still must be determined whether plaintiff's claims, as alleged in the complaint, could proceed under Bivens.  As the Second Circuit has stated,

> the Supreme Court has expressly limited Bivens claims which allege violations of procedural due process. "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 880 (2d Cir.1996) (citations omitted). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to deprivation."

---

[7]  Plaintiff is further advised that she cannot bring Bivens claims against individual officers in their official capacities, only in their individual capacities. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (holding that a Bivens action "must be brought against the federal officers involved in their individual capacities[.]")

Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001).  Although in a different context,[8] the Supreme Court has "cautioned against extending Bivens into a context that involves the 'regulating [of] the conduct of agents at the border,' Hernandez[ v. Mesa], 140 S. Ct. [735,] 747 [(2020)], and emphasized that the existence of 'alternative remedies for aggrieved parties . . . independently foreclose[s] a Bivens action,' Egbert[ v. Boule], 142 S. Ct. [1793,] 1806 [(2022)])."  Morales v. United States, No. 18-CV-4247 (CBA/RER), 2023 WL 2129580, at *9 (E.D.N.Y. Feb. 17, 2023). If plaintiff is alleging a violation of her constitutional rights by border patrol agents, the undersigned observes that, "by regulation, Border Patrol must investigate '[a]lleged violations of the standards for enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint.'" Egbert, 482 U.S. at 497 (quoting 8 C.F.R. §§ 287.10(a)-(b)).

Although it appears unlikely, given the above, that the Court would extend Bivens to a procedural due process claim involving being denied the opportunity to apply for asylum, being denied asylum, or related matters, given that the undersigned has limited factual information, it is not possible to fully perform a Bivens analysis.  Accordingly, considering the special solicitude due to the pro se plaintiff and the Second Circuit's direction to avoid dismissing a pro se plaintiff's complaint without providing an opportunity to amend, Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991), it is recommended that plaintiff be given an opportunity to amend on this ground should plaintiff wish to amend to name individual federal officers, rather than federal agencies and provide sufficient factual support so that this Court may fully and properly assess whether her procedural due process claims could proceed under Bivens.  See FED. R. CIV. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

## C.  Subject Matter Jurisdiction, Generally

In addition to the Court having insufficient information to perform a Bivens analysis, the Court does not have sufficient information to assess whether it has subject matter jurisdiction

---

[8]  The claims involved whether to extend Bivens to Fourth Amendment excessive force claims against border agents.

over plaintiff's complaint under any other ground or statute.  As noted above, it is not clear whether plaintiff properly filed for asylum at all, whether there was a determination before an immigration judge or from the Board of Immigration Appeals, whether she had a proceeding before Immigration and Naturalization Service ("INS"), whether plaintiff sought and was denied a visa, whether plaintiff entered the United States or remained at the "threshold," or even if plaintiff was ever placed in immigration-related detention in connection with her claims raised herein.[9] See generally Compl.; see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."); DHS v. Thuraissigiam, 591 U.S 103, 140 S. Ct. 1959, 1982-83 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").  Although plaintiff does not make specific allegations, her citation to unspecified "federal regulations" appears to also suggest that plaintiff is claiming that an interview associated with her asylum application may have been "adversarial" in nature.  Compl. at 5.  However, plaintiff does not provide enough information about this interview, such as who performed the interview, what the interview was in relation to, when it occurred, where it occurred, or any other factual details.  See generally Compl.

The Court must be provided more information about the facts underlying plaintiff's claims because whether this Court has subject matter jurisdiction to hear her claims varies depending on the context in which she was apparently denied entry into the United States.

> The Fifth Amendment mandates that no person shall "be deprived of life, liberty, or property, without due process of the law." U.S. CONST. amend. V.  Due process protects noncitizens who are on U.S. soil. See Zadvydas v. Davis, 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

---

[9]  Plaintiff makes a reference to being "illegally handcuffed and chained both arms and legs," but it is not clear if this is in connection with her arrest in Canada or an interaction with defendants within the United States.  Comp. at 6.

Jacinto-Castanon de Nolasco v. U.S. Immigr. & Customs Enf't, 319 F. Supp. 3d 491, 499

(D.D.C. 2018).

> Aliens within the country "are entitled to due process" and "must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner." Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007) (internal citations and quotation marks omitted). "Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process." Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (internal citation and quotation marks omitted).

Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 57-58 (S.D.N.Y. 2020).  Further,

> "an assertion that the INS's [Immigration and Naturalization Service] determination was based on a complete absence of any evidence in the record such that the decision was wholly arbitrary and constituted a denial of due process, . . . would be cognizable under § 2241 review." Pickett v. INS, 237 F.Supp.2d 175, 182 (D.Conn. 2002). See also United States ex rel. Vajtauer v. Comm'r of Immigration, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560 (1927) ("Deportation . . . on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus.").

Bicaj v. Ashcroft, No. 01 CIV. 11568 (RWS), 2003 WL 21355488, at *3 (S.D.N.Y. June 11, 2003).[10]

> The Mandamus Act provides district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Similarly, the APA [Administrative Procedures Act, 5 U.S.C. § 551 et seq.] requires that "within a reasonable time, each agency shall proceed to conclude a matter presented to it," and that courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). Judicial review is barred under the APA in cases where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." Id. §§ 701(a)(1), (2). The presumption favoring judicial review of administrative action is well settled and applied to legislation concerning immigration. See[] Kucana v. Holder, 558 U.S. 233, 251 (2010). It is presumed that Congress legislates with this presumption in mind.

---

[10] Although the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, 100 Stat. 3009 (1996), limit the scope of jurisdiction that district courts have in matters of immigration, the Supreme Court of the United States has held that district courts retain jurisdiction over petitions for habeas corpus relief pursuant to 28 U.S.C. § 2241. Calcano-Martinez v. Immigration and Naturalization Service, 533 U.S. 348, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001); Immigration and Naturalization Service v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, (2001). The United States Supreme Court has specifically confirmed that § 2241 is "available as a forum for statutory and constitutional challenges" to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Kritsun v. Ashcroft, No. 02-CV-0760SR, 2004 WL 1811418, at *3 (W.D.N.Y. Aug. 10, 2004).

Accordingly, a party challenging the presumption must present clear and convincing evidence to overcome it. Id.

Yueliang Zhang v. Wolf, No. 19-CV-5370 (DLI), 2020 WL 5878255, at *3 (E.D.N.Y. Sept. 30, 2020).   [U]nder the consular nonreviewability doctrine, "a consular officer's decision to deny a visa is immune from judicial review."  Tharmabalan v. Blinken, No. 23 CIV. 3539 (GWG), 2024 WL 1841273, at *5 (S.D.N.Y. Apr. 29, 2024) (quoting Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 123 (2d Cir. 2009)); see also Trump v. Hawaii, 585 U.S. 667, 702 (2018) ("For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.' Because decisions in these matters may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'").

As the Second Circuit has instructed, "[i]t is settled that the judiciary will not interfere with the visa-issuing process" due to the doctrine of consular nonreviewability. Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1181 (2d Cir. 1978). "The Second Circuit has held that the doctrine of consular nonreviewability bars judicial review of decisions to deny, suspend or grant an immigration visa." Ahmed v. Bitter, No. 23-CV-189, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024).

Sharifi v. Blinken, No. 1:23-CV-5112-OEM, 2024 WL 1798185, at *2 (E.D.N.Y. Apr. 25, 2024)

As the Court does not have enough factual information before it about plaintiff's claims, it cannot properly determine whether it has subject matter jurisdiction.   Accordingly, due to plaintiff's po se status, it is recommended that plaintiff's complaint be dismissed with prejudice and with opportunity to amend to provide sufficient facts and attempt to demonstrate this Court's jurisdiction.[11]

---

[11] Any amended pleading supersedes and replaces a prior pleading in its entirety.  In the event the District Judge adopts the undersigned's recommendation and plaintiff amends his complaint, plaintiff is advised that any amended pleading cannot incorporate a prior pleading by reference.  See, e.g., Anthony v. Fein, Such & Crane, LLC, No. 5:15-CV-00452 (DNH/TWD), 2015 WL 7749894, at *5 (N.D.N.Y. Sept. 22, 2015) ("[I]n the event Plaintiff is granted leave to amend, he is instructed that the amended complaint will take the place of and effectively invalidate Plaintiff's second amended complaint"), report and recommendation

### III. **Motion for Counsel**

Plaintiff has also filed a motion for appointment of counsel.  <u>See</u> Dkt. No. 10.  Plaintiff

provides that she contacted by phone Legal Aid Rochester, Human Rights First, "Legal Aide

Society," and Immigration helpline.  <u>Id.</u> at 1.  Plaintiff does not provide proper documentation of

her efforts to obtain counsel on her own from the private or public sectors.  She simply appends,

with no explanation, a single document that states: "Online Intake is Temporarily Closed.  If you

are in need of assistance, please contact our office at 585.232.4090."  Dkt. No. 10-1 at 1.

Plaintiff contends that she should be appointed pro bono counsel because "[t]he counsel

assistance is essential for a fair trial[.]  Inability to afford legal representation due to financial

hardship[.]  A counsel should be appointed because plaintiffs are facing poverty & unable to

meet [t]heir basic needs.  A counsel would be crucial given in this situation."  Dkt. No. 10 at 1.

It is well-settled that there is no right to appointment of counsel in civil matters.  <u>See</u>

<u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d Cir. 1994).  Title 28 of United States Code Section

1915 specifically provides that a court may request an attorney to represent any person "unable

to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in

order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly

need a lawyer's assistance.  <u>Cooper v. A. Sargenti, Inc.</u>, 877 F.2d 170, 172-73 (2d Cir. 1989).

In <u>Terminate Control Corp. v. Horowitz</u>, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit

reiterated the factors that a court must consider in ruling upon such a motion.  In deciding

whether to appoint counsel, the court should first determine whether the indigent's position

seems likely to be of substance.  If the claim meets this threshold requirement, the court should

then consider a number of other factors in making its determination.  <u>See</u> <u>id.</u> at 1341 (quoting

---

<u>adopted</u>, 2015 WL 7738048 (N.D.N.Y. Dec. 1, 2015).  Further, an amended complaint may not replead
any claims or defendants dismissed by this Court with prejudice.  An amended pleading must establish
this Court's jurisdiction and state a claim for relief against each named defendant for which leave to
replead was granted, according to Rules 8 and 10 of the Federal Rules of Civil Procedure.

Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)); Sawma v. Perales, 895 F.2d 91, 95 (2d Cir. 1990).  Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason . . .why appointment of counsel would be more likely to lead to a just determination.

Hodge, 802 F.2d at 61.  None of these factors are controlling, however, and each case should be decided on its own facts.  See id.

Here, this case is at the earliest stage.  The Court has not yet determined whether any of plaintiff's claims will survive initial review, and the undersigned herein recommends dismissing the complaint.  As the undersigned has dismissal based on the current pleading, concluding that it is not possible to fully determine what the allegations are in plaintiff's complaint or whether this Court has subject matter jurisdiction, it has yet to be determined that plaintiff's position "seems likely to be of substance."  That plaintiff cannot afford counsel and believes that having counsel would be "crucial" to her case, Dkt. No. 10 at 1, are not sufficient reasons for appointment of counsel.  Nearly all pro se plaintiffs who seek appointment of counsel are unable to afford private counsel and would prefer the assistance of counsel.  The Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

For these reasons, plaintiff's second motion for the appointment of counsel is denied.  If plaintiff files an amended complaint and it is determined that any portion of her complaint is permitted to proceed following section 1915 review, plaintiff may renew her motion for appointment of counsel.  However, she may only do so if she can show a change in circumstances that would require reconsideration of the above.

### IV. **Motion for Temporary Injunction**

**I**njunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A party

seeking a preliminary injunction "must demonstrate that it will suffer irreparable harm absent injunctive relief and either (1) that it is likely to succeed on the merits of the action, or (2) that there are sufficiently serious questions going to the merits to make them a fair ground for litigation, provided that the balance of hardships tips decidedly in favor of the moving party." Mullins v. City of New York, 626 F.3d 47, 52–53 (2d Cir. 2010) (citing Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 34-35 (2d Cir. 2010)).

Mintz v. Chiumento, No. 1:23-CV-795 (MAD/CFH), 2024 WL 1361047, at *3 (N.D.N.Y. Mar. 20, 2024).

Plaintiff files a motion for a temporary injunction "to grant relief to leave Canada immediately." Dkt. No. 9 at 1. Plaintiff states that she further seeks a temporary injunction:

against the defendant restraining him to enter the united states of America premises allowed to regulate her] cherryl augute. immigration status base on her arrivial [sic] to the united states On 02/08/2000 at St.thomas virgin islands. ms)auguste is a true survivor arriving on the shores of united states from via a boat with her mother . . . and her brother . . . at the age of 8 years old to then lived through repeated sexual abuse as minor which caused mental health to deteriorate . . . . the court owes a duty to protect plaintiffs(s) which are seeking immediate refuge in the united states. Which is evident as retaliator measures were taken against ms) auguste on 12/22/2023 she was arrestd [sic] after filing lawsuit against the canadian government for violating her and her childrens [sic] human rights. Pass any such order as may be deemed ft and proper on the facts and circumstances of this case.

Dkt. No. 9 at 3. Plaintiff states "[t]hat there will be irreparable damage to the applicant if the temporary injunction is not granted as authority has and will be misused by Defendant(s). This is a time sensitive matter in regards to the applicant(s) wellbeing and safety. Id. at 2. Plaintiff contends that because she is facing "persecution by the canadian government since 07/31/2017 plaintiffs identify as (a) black african americans and not being allowed to return back to the united states on several occasions 08/11/2023 . . . unable to renew tps status expired on 07/22/2017 and taken advantage of by the canadian government . . . . There is a prospect of irreparable injury if the relief is withheld . . . ." Id. Plaintiff is "seeking a quality of life away from the persecutuon [sic] retaliatory measures have been taken againsts [sic] for speaking out about the abuse they have face in a foreign land. where they are being subject to relentilous [sic] abuse by the government." Id. Plaintiff further states that

> [i]f the relief is withheld there is immediate danger to plaintiffs as ms auguste is not a canadian permanent and face possible deportation of relief is not granted. The acts of the canadian government violates the us constitutional rights and the courts have the duty to protect us citizen[12] and their family members if their rights are being withheld in this case by the canadian government base [sic] on their skin color (black) plaintiff(s) identifies as (african americans) social economic status, discrimination favor of the applicant as against the defendant. A duty to protect further harm from occurring.

Dkt. No. 9. at 3.

Plaintiff appears to seek this Court to compel various federal agents to award plaintiff and her minor children immediate entry into the United States.  See generally Dkt. No. 9. Insofar as she seeks relief "against the defendant restraining him to enter the united states of America premises allowed to regulate her] cherryl augute," it appears that plaintiff may also be seeking this Court to bar an unnamed individual from being permitted to enter into the United States.  See id. at 3.  It is recommended that plaintiff's motion for a preliminary injunction be denied.

First, plaintiff has failed to show that she will likely succeed in the merits of her action because, as noted herein, she has failed to provide this Court with sufficient factual information to assess her claims and determine whether this Court has subject matter jurisdiction.  See Mintz, 2024 WL 1361047, at *3.  Second, plaintiff is seeking to expedite what appears to be the ultimate relief she is seeking in this action – permission to enter and/or remain within the United States.  As this Court has insufficient factual information about plaintiff's apparent attempts at entry into the United States and the circumstances surrounding the apparent denials, and what, if any, hearings or appeals she may have participated in/pursued, the Court also cannot make this determination on a motion for a preliminary injunction.  Accordingly, it is recommended that the motion be denied.

---

[12]  Plaintiff Ms. Auguste is not a United States citizen; however, she provides that one of her minor children is a citizen and another of her minor children's U.S. citizenship application is "pending" as he is a "uscitizen [sic] bornabroad [sic]." Dkt. No. 9 at 2.  It appears that she is referencing her child's citizenship status here.  See Dkt. No. 9 at 3.

V. **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby:

**ORDERED**, that plaintiff's in forma pauperis application, Dkt. No. 2, is **GRANTED**; and it is further

**ORDERED**, that plaintiff's motion for appointment of counsel, Dkt. No. 10, is **DENIED** without prejudice; and it is

**RECOMMENDED**, minor plaintiffs Davoriian Auguste, Kerome Brown, Jr., and Aiden Auguste be **DISMISSED** and terminated as plaintiffs in this action and the caption be updated to reflect their termination; and it is further

**RECOMMENDED**, that insofar as plaintiff seeks to proceed on claims relating to an arrest and injury in Canada, those claims be **DISMISSED** with prejudice and without opportunity to amend; and it is further

**RECOMMENDED**, that, insofar as plaintiff's complaint may be read as seeing to raise section 1983 or Bivens claims against the named federal agencies, such claims be **DISMISSED** with prejudice and without opportunity to amend, but without prejudice to plaintiff having the opportunity to amend should she wish to attempt to raise Bivens claims against federal officers in their individual capacities; and it is further

**RECOMMENDED**, that the remainder of plaintiff's complaint, Dkt. No. 1, be **DISMISSED** without prejudice and with opportunity to amend; and it is further

**RECOMMENDED**, that plaintiff's motion for a temporary injunction, Dkt. No. 9, be **DENIED**; and it is

**ORDERED**, that this Report-Recommendation & Order be served on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v.

Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72 & 6(a).[13]

　　　　Dated: May 15, 2024
　　　　Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[13] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).